<u>**NOT FOR PUBLICATION**</u>

```
FILED
JAMES J. WALDRON, CLERK

SEPT. 21, 2009

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY
```

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:

**NATHAN AND MIRIAM BARNERT MEMORIAL HOSPITAL ASSOCIATION d/b/a BARNERT HOSPITAL**,

               Debtor.

Case No.:    07-21631 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

<u>**OPINION**</u>

**APPEARANCES:**

McCarter & English, LLP
Joseph Lubertazzi, Jr., Esq.
100 Mulberry Street
Newark, New Jersey 07102
***Counsel for Debtor***

Porzio, Bromberg & Newman, PC
Warren J. Martin, Jr., Esq.
100 Southgate Parkway
Morristown, New Jersey 07962
***Counsel for Official Committee***
 ***of Unsecured Creditors***

Forman Holt Eliades & Ravin LLC
Charles M. Forman, Esq.
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
***Liquidating Trustee for the Debtor's Estate***

Donald F. MacMaster, Esq.
Office of the U.S. Trustee
One Newark Center
Suite 2100
Newark, New Jersey  07102-5504
***United States Trustee***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are final fee applications in *In re Nathan and Miriam Barnert Memorial Hospital Association, d/b/a Barnert Hospital* ("Barnert" or "Debtor") filed by McCarter & English LLP ("McCarter") for professional services provided as Debtor's Counsel and Porzio, Bromberg & Newman, PC ("Porzio") for professional services provided to the Official Committee of Unsecured Creditors ("Committee"). Porzio, the United States Trustee ("UST"), and Charles M. Forman, Liquidating Trustee for the Debtor's Estate ("Liquidating Trustee") filed objections to McCarter's fee application seeking a review of McCarter's retention contending that a conflict of interest meriting disqualification existed. McCarter opposed Porzio's fee application challenging the reasonableness and necessity of services rendered.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. For the reasons stated hereafter, McCarter's final fee application is granted in the amount of $1,485,289 and expenses of $77,175.25 and Porzio's fee application is granted in the amount of $880,299.35 and expenses of $39,989.57.

**Statement of Facts and Procedural History**

Barnert filed its Chapter 11 Petition on August 15, 2007. The Court approved the retention of McCarter as Debtor's Counsel on September 4, 2007. *See App. in Supp. of Final App. for Allowance and Payment of Fees and Disbursements to McCarter & English, LLP, Counsel to the*

3

*Debtor ("McCarter Fee App.")*, ¶ 2.  Barnert also retained Teich Groh as conflicts counsel which

the Court approved on September 10, 2007.  *Obj. by UST to McCarter Fee App. ("UST Obj.")*, ¶ 6.

That day, the Office of the United States Trustee for the District of New Jersey formed the

Committee and Porzio was selected to serve as Committee Counsel with the Court approving that

retention on October 9, 2007.  *Porzio Final Fee App.*, ¶ 3.

In its first interim fee application, McCarter sought $1,106,114 in fees and $28,771.94 in

disbursements. The Committee objected to this fee application arguing that McCarter had an

undisclosed prior and continuing representation of St. Joseph's Regional Medical Center ("St.

Joseph's") creating a disqualifying conflict of interest. *UST Obj.*, ¶ 9.

The Court requested that McCarter file a Supplemental Affidavit disclosing the nature of its

relationship with St. Joseph's.  *Id.* at ¶ 8.  In that affidavit, McCarter stated that it had represented

St. Joseph's on two occasions, once in 2004 with respect to financing for its Wayne hospital and in

early 2006 with respect to an outstanding bond issue.  *See Supplemental Aff. of Joseph Lubertazzi,*

*Jr. Pursuant to Sections 327, 329 and 504 of the Bankruptcy Code and Disclosure Pursuant to*

*Federal Rules of Bankruptcy Procedure 2014(a) and 2016(b) and (c) ("Lubertazzi Supp'l Aff.")*, ¶ 2.

These services were provided by McCarter's Public Finance Group, specifically Scott Kobler, who

specializes in hospital financing.  *Id.*  Lubertazzi attested that St. Joseph's was not a client of

McCarter at the time of its initial retention by the Debtor nor at the time of the bankruptcy filing.

*Id.* at ¶ 3.

After the Chapter 11 filing, Kobler was approached by St. Joseph's in September 2007 with

respect to a bond financing.  *Id.* at ¶ 4.  Lubertazzi, lead counsel for the Debtor,  was notified of this

and was informed representation would not occur until late 2007 or early 2008.  *Id.*  Lubertazzi

4

notified Kobler that he could not be involved with the Debtor's proceeding. *Id.* Lubertazzi states

that he took the appropriate steps to ensure that McCarter would not have contact with St. Joseph's

relative to the Debtor's proceeding. *Id.* In fact, during the bankruptcy proceeding, any contact

Lubertazzi had with respect to St. Joseph's was about public events and those conversations were

with St. Joseph's counsel, Cole, Schotz, Meisel, Forman and Leonard P.A. *Id.* at ¶ 5. Teich Groh,

in its role as conflicts counsel, was in a position to handle any substantive matters involving St.

Joseph's in the Chapter 11 proceeding. *Id.* At ¶ 6. Finally, Lubertazzi states that Barnert itself was

fully aware of McCarter's relationship with St. Joseph's. *Id.* at ¶¶ 6, 8.

Lubertazzi also avers that McCarter had no substantive contact with potential bidders for the

assets of the Barnert estate. *Id.* at ¶ 5. The Debtor retained an investment banker, Cain Brothers, to

oversee and facilitate the bidding and sale process. *Id.* Counsel's only involvement was when Cain

Brothers would request McCarter to prepare confidentiality agreements from time to time. *Id.*

Lubertazzi states that St. Joseph's neither submitted a bid nor executed a confidentiality agreement.

*Id.* The time records of McCarter and Teich Groh confirm that St. Joseph's was not formally

involved in the Debtor's bankruptcy proceeding. *Id.* at ¶ 6.

Upon learning of the objections raised by Porzio, Lubertazzi reviewed McCarter's billing

records for St. Joseph's, for which no invoices had been rendered. *Id.* at ¶ 7. The anticipated fees

to be received from St. Joseph's for the public bond financing work was to be less than .5% of

McCarter's annual gross revenues. *Id.* There were less than five (5) hours of services rendered in

September 2007, less than one (1) hour in November 2007, and then services for the bond

transaction began in early January 2008. *Id.* Lubertazzi acknowledges that these services continued

during the case. *Id.* However, different attorneys from those involved in the bankruptcy case were used on these matters and no overlap was expected. *Id.*

McCarter submits that this Supplemental Affidavit was not filed earlier due to inadvertence and oversight. *Id.* Nevertheless, the Debtor was aware of the conflict and Teich Groh was addressing any issues with St. Joseph's as evidenced by its First Interim Fee Application dated April 17, 2008. *Teich Groh First Interim Fee App.*, ¶ 11 Specifically, Teich Groh listed negotiations with St. Joseph's for a transfer of Barnert's behavioral health program and facility. *Id.* After Lubertazzi made his supplemental submission, the Court entered  Orders approving the First Interim Fee Application of McCarter and Porzio on May 29, 2008.

McCarter filed its Second Interim Fee Application on July 15, 2008 seeking $248,917.50 in fees and $6,671.32 in disbursements. *McCarter Fee App.*, ¶¶ 6-7. In response, Porzio filed an express reservation of rights to further explore the St. Joseph's issue at the time of the Final Fee Applications. *See Express Reservation of Rights filed by Porzio*, August 27, 2008. The Court approved McCarter's Second Interim Fee Application on September 3, 2008 and directed counsel to file their final fee applications by January 9, 2009. *Id.* at *¶* 8.

On October 6, 2008, the eve of the Debtor's confirmation hearing, Porzio, on behalf of the Committee, commenced an adversary proceeding against McCarter seeking disgorgement of fees already paid and arguing that McCarter breached its fiduciary duty by its representation of St. Joseph's and because of its failure to honor an ethical wall within the firm with respect to representation of AmeriHealth Administrators ("AmeriHealth") in litigation against the Debtor. *UST Obj.*, ¶ 12. The Adversary Proceeding has been assigned to the Liquidating Trustee through the confirmed Plan of Liquidation. *Id.* The parties settled the adversary proceeding at a case

6

management conference agreeing to have the Court adjudicate the alleged conflict of interest in conjunction with the final fee applications currently before the Court.

In its Final Fee Application, McCarter requests that all previous fee awards be made final and seeks $253,558.50 in additional fees and $41,731.99 in disbursements for the June 1 through December 31, 2008 period. *McCarter Fee App.*, ¶ 9. In total, McCarter seeks a final award of $1,650,321.99 in fees and $77,175.25 in expenses. McCarter also seeks permission to apply the $200,000 retainer it holds in trust to the fee awards. *Id.* During the final period, McCarter provided, *inter alia*, the following services: (1) preparation for asset sale to Community Health Care Associates, LLC; (2) negotiating with the Committee, the Department of Housing and Urban Development (HUD), the secured creditors and the UST with respect to the sale; (3) resolving post-closing issues; (4) addressing issues regarding patient records; (5) reviewing and negotiating administrative claims; (6) drafting and filing plan and disclosure statement; and (7) facilitating the transition with the Liquidating Trustee. *Id.* at ¶ 16.

The United States Trustee filed opposition to McCarter's Final Fee Application arguing a sanction is appropriate and that fees may be denied if a professional is not a disinterested person or represents an interest adverse to the estate. *Id.* at ¶ 17.

The Liquidating Trustee also filed opposition due to McCarter's failure to disclose its representation of St. Joseph's, who the Liquidating Trustee characterizes as a potential bidder at various times for the Debtor's assets. *See Obj. of Liquidating Trustee to McCarter Fee App.*, ¶5-7. The Liquidating Trustee focuses on the AmeriHealth litigation and McCarter's "non-disclosure." *Id*. at ¶¶ 18-22. Specifically, the Liquidating Trustee takes issue with a settlement email chain in the *AmeriHealth* litigation that was internally forwarded to Lubertazzi and suggested that he

7

commented on the settlement. *Id.* at ¶ 22. The Liquidating Trustee argues that McCarter's inadvertent non-disclosure did not allow the Court to perform a full evaluation of the conflicts in this case and notes that the Court has discretion to determine the sanction to be imposed if a conflict of interest is found to exist. *Id.* at ¶¶ 43-46. In fairness, both the UST and the Liquidating Trustee stated at oral argument that McCarter provided valuable services to this estate and that the Court has wide discretion when addressing fee awards. *See In re Barnert Memorial Hospital*, 07-21631 (DHS), *Hrg. Oral Tr.* 10:34-36 (May 20, 2009).

Porzio argues for the disgorgement of a majority of McCarter's fees due to the firm's representation of St. Joseph's. *See Obj. Of Admin. Creditor, Porzio to McCarter's Final Fee App. ("Porzio Obj.")*, 2. Porzio reasons that disgorgement by McCarter would allow for an increase in the percentage paid to all administrative creditors and Porzio emphasizes that McCarter did not amend its retention papers until directed by the Court to disclose the relationship with St. Joseph's. *Id.* at ¶¶ 2-3, 17-19. Porzio asserts that prior to the Petition Date and in the subsequent weeks, McCarter was assessing potential "affiliation models" and conferring with St. Joseph's other counsel, although McCarter has stated that it was not representing St. Joseph's at that time. *Id.* at ¶¶ 36-39; *Lubertazzi Supp'l Aff.*, ¶¶ 3-4.

Through discovery in the adversary proceeding, St. Joseph's Chief Executive Officer, William McDonald, was deposed. *Porzio Obj.* at ¶ 42. McDonald testified that St. Joseph's was a competitor of Barnert and acknowledged certain departments and medical professionals "migrated" to St. Joseph's upon Barnert's Chapter 11 filing. *Id.* After Barnert closed, St. Joseph's took the Behavioral Health Center for no consideration. *Id.* The Debtor eventually also sought Court

8

approval for a sale of personal and real property to St. Joseph's for no monetary value arguing that there were public health concerns that would be satisfied by the sale. *Id.* at ¶ 43.

In answer to Porzio's Objection, McCarter submitted a supplemental response after oral argument. *See Response of McCarter & English LLP to Supp'l Obj. of Porzio ("McCarter Response"),* ¶ 2. McCarter contends that its efforts clearly allowed for the hospital to continue operation past September 2007 when it was first ordered closed by the State of New Jersey and that patient care, employees' jobs, and vendors' business continued. *Id.* McCarter points out that this result was due to the efforts of *all* professionals to continue patient care and facilitate a sale of assets. *Id.* McCarter seeks to clarify the record that St. Joseph's did indeed submit a "white paper" offer to purchase the Debtor's assets for no consideration which was summarily rejected by HUD, the secured creditor. *Id.* at ¶ 4. Cain Brothers also did not have contact with St. Joseph's with respect to a viable bid. *Id.* at ¶ 5. McCarter suggests that the underlying facts and events that have transpired in this case are being overshadowed by attorney argument. *Id.* at ¶¶ 8-9.

Porzio filed its Final Fee Application and an Amended and Restated Supplement in which it sought a total of $880,299.35 in fees and $39,989.57 in disbursements. The Amended and Restated Supplement was filed seeking $49,557.50 in fees and $2,118.66 in expenses in connection with 168.3 hours of service provided in the adversary proceeding. Porzio argues that the additional services provided in connection with prosecuting the adversary proceeding and preparing discovery were necessary, reasonable, and benefitted the estate.

McCarter filed opposition to Porzio's Final Fee Application. McCarter requests that the Court "closely scrutinize" the reasonableness and necessity of services rendered by Porzio pursuant to section 330. *McCarter Opp. to Porzio Fee App. ("McCarter Opp."),* ¶¶ 1-2. McCarter's main

contention is that a large portion of the fees requested by Porzio are related to the adversary

proceeding against McCarter and states that its defense in that adversary proceeding is not being

borne by the Barnert estate, while Porzio is filing a fee application including those services. *Id.* at

¶ 4.

**<u>Discussion</u>**

**A.    Legal Standards**

The Bankruptcy Code provides the standard for reviewing and awarding compensation to

professionals in a bankruptcy case.  Section 330(a)(1) of the Code provides:

> After notice to the parties in interest and the United States trustee and
> a hearing, and subject to sections 326, 328, and 329, the court may
> award to a trustee, a consumer privacy ombudsman appointed under
> section 332, an examiner, an ombudsman appointed under section
> 333, or a professional person employed under section 327 or 1103–
>
> > (A)  reasonable compensation for actual, necessary services
> > rendered by the trustee, examiner, ombudsman,
> > professional person, or attorney and by any
> > paraprofessional person employed by any such person;
> > and
>
> > (B)   reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

The bankruptcy court maintains independent authority and responsibility to review fee

applications for the reasonableness of compensation.  *In re Busy Beaver Bldg. Ctrs. Inc.*, 19 F.3d

833, 842-43 (3d Cir. 1994); *see also Comm. of Eq. Sec. Holders v. Off. Comm. of Unsecured

Creditors (In re Federal Mogul-Global, Inc.)*, 348 F.3d 390, 396-97 (3d Cir. 2003).  Reasonableness

of compensation should be considered in light of the tangible benefits the fee applicant has conferred

upon the estate as well as the creditors, determination of which is left to the sound discretion of the

court. *See* 11 U.S.C. § 330(a)(2) & (3); *In re Zenith Labs., Inc.*, 119 B.R. 51, 54 (Bankr. D.N.J.

1990).  The fee applicant maintains the "burden of proving it has earned the fees it requests, and that

the fees are reasonable." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir.

1995) (citation omitted).

In addition to a finding of reasonableness, the majority of courts have determined the

"necessity" of particular services from the posture of events at the time that the services were

rendered, rather than based on hindsight after the services were performed.  *In re Top Grade*

*Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000), *abrogated on other grounds* by *Lamie v. United*

*States Trustee*, 124 S. Ct. 1023 (2004); *Zolfo Cooper & Co.*, 50 F.3d at 261; 2 *Collier on Bankruptcy*

¶ 330.04(1)(b)(iii)(15th ed. rev. 2009).   This is the approach now codified in 11 U.S.C.

§ 330(a)(3)(c).  *See* 11 U.S.C. § 330(a)(3)(c).

In the instant matter, the crux of the contentions by the objecting parties is not regarding the

reasonableness and necessity of the proposed services, but instead primarily concerns whether

McCarter's failure to timely disclose its representation of St. Joseph's  was a conflict of interest

requiring disgorgement of fees.

The employment of counsel in bankruptcy cases is governed by Section 327(a) of the

Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014, and the local rules of professional

conduct.  "Bankruptcy professionals are required to examine their relationship not only based on the

two-party litigation model, but also one guided by 'a stricter, fiduciary standard.'" *In re Congoleum*

*Corp. et al.*, 426 F.3d 675, 687 (3d Cir. 2005) (citing 1 *Collier on Bankruptcy* ¶ 8.01(1)).  Section

327(a) states:

> [T]he trustee, with the court's approval, may employ one or more
> attorneys, accountants, appraisers, auctioneers, or other professional

11

persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Section 327 applies to a debtor in possession as well as a trustee. *In re Congoleum Corp. et al.*, 426 F.3d at 689 n.13. Section 327(a) articulates a two-pronged approach when considering a retention application. The professional (1) must not hold or represent an interest adverse to the estate and (2) must be disinterested. *See id.; In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 475 (3d Cir. 1998). An adverse interest is defined as "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *See In re E-Toys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (citations omitted). In relevant part, a "disinterested person" is one that "does not have an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).[1]

Summarily, the Third Circuit has articulated the following standard to be applied under Sections 327(a) and 101(14):

(1) Section 327(a) as well as Section 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion–pursuant to Section 327(a) and consistent with Section 327(c)–disqualify an attorney who has a potential conflict of interest; and (3) the district court may not disqualify an attorney on the appearance of conflict alone.

---

[1]Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Section 101(14) defining "disinterested person" contained five subsections which included portions relevant to investment banks. The case law prior to 2005 is applicable to the instant matter as the present Section 101(14)(C) remains unchanged from pre-2005 Section 101(14)(E) with the exception of removing references to investment bankers and the subsequent re-lettering of subsections.

*In re Marvel Entertainment Group*, 140 F.3d at 476 (reiterating *In re BH&P, Inc.*, 949 F.2d 1300

(3d Cir. 1991)).

Moreover, Bankruptcy Rule 2014 sets forth the procedure requiring disclosure of the

attorneys' relationships with parties and interests in the case as mandated by Section 327(a).  Rule

2014 requires that an application to retain counsel for the debtor:

> be accompanied by a verified statement of the person to be employed
> setting forth the person's connections with the debtor, creditors, or
> any other parties in interest, [and] their respective attorneys and
> accountants.

FED. R. BANK. P. 2014(a).

"Disclosure 'goes to the heart of the integrity of the bankruptcy system.'  Therefore, the duty

to disclose under Bankruptcy Rule 2014 is considered sacrosanct."  *In re E-Toys,* 331 B.R. at 189

(citation omitted); *see also In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).  It is

also clear that the duty to disclose is ongoing.  *In re E-Toys*, 331 B.R. at 190; *In re Tinley Plaza*

*Assocs*, L.P. 142 B.R. 272, 278 (Bankr. N.D. Ill. 1992) ("The need to disclose continues beyond the

initial stage of application to employ counsel. . . . If a conflict arises after the attorneys that are

employed by the debtor in possession such conflict must be disclosed to the court and the court must

immediately disqualify the attorney.") (citations omitted).

**B.    Analysis**

McCarter's representation of St. Joseph's after the Barnert petition was filed is the most

troubling of the conflict of interest arguments in this case. The UST and the Liquidating Trustee

have not sought a total disgorgement of fees by McCarter, but seek sanctions.  Porzio suggests a

significant disgorgement and return of the $200,000 retainer still being held.  Porzio relies heavily

upon a recent decision by the Honorable Morris Stern, United States Bankruptcy Judge, District of

13

New Jersey in *In re St. Mary's Hospital, Passaic, New Jersey.* In that case, Judge Stern disqualified McCarter from representing St. Mary's at the outset of its chapter 11 case due to the ongoing representation of St. Joseph's involving the same bond financing at issue here. *See In re St. Mary's Hosp.*, 09-15619 (MS), *Hrg. Tr.* 27:3-22 (Apr. 16, 2009).

In the instant matter, the bond financing representation commenced after the petition was filed and was subsequently disclosed to the Court, albeit with delay. There is no question but that McCarter should have disclosed this potential conflict as soon as it occurred and was discovered. *See In re E-Toys, Inc.*, 331 B.R. at 203 (potential conflicts should be disclosed when discovered). However, on the record before this Court, it is clear no intentional misconduct occurred and none is found by this Court.

What is clear from the record is that the bond financing did not begin until early 2008. At that time, McCarter had for several months represented and defended the Debtor's interests against closure of the hospital and the Debtor's sale efforts were well underway facilitated by Cain Brothers, the independent investment banker retained for those purposes. Significantly, the Debtor was not directing the marketing efforts of its assets. *See In re Barnert Memorial Hosp.*, *Hrg. Oral Tr.* 10:42. In comparison, the St. Joseph's bond financing had already taken place at the time of commencement of St. Mary's chapter 11 and the involvement of McCarter on behalf of St. Joseph's was well known and had to continue because of a responsibility to respond to inquiries related to the financing. *See In re St. Mary's Hosp.*, *Hrg. Tr.* at 25:10-17. Thus, McCarter had a substantial continuing relationship with St. Joseph's and could not terminate that relationship at the time of the commencement of the *St. Mary's* case. *Id.* It was chiefly for that reason that McCarter could not simultaneously represent St. Mary's. Stated again, based upon the record before this Court,

14

McCarter was not actively representing St. Joseph's when the *Barnert* case was commenced in 2007 and its bond financing representation, because of conflicts counsel and ethical walls established within the firm, throughout the *Barnert* case was at most a potential conflict with this Debtor.

In *St. Mary's*, as a basis for his decision, Judge Stern cited to the proximity between the debtor and St. Joseph's and the inherent competition between medical facilities for state and federal funding, doctors, personnel, and other services. *St. Mary's Hrg. Tr.* 24:11-21. Such concerns regarding competition was not as evident in 2007 and, it is fair to point out, Judge Stern had the benefit of hindsight and made the informed decision at the outset of that case to avoid these issues from coming to fruition at a later time. *Id.* at 27:17-22.

Here, at the early stages, any communication regarding St. Joseph's was through its counsel, Cole Schotz. When issues arose that required St. Joseph's involvement in the *Barnert* case, Teich Groh, as conflicts counsel handled those matters. Thus, McCarter took appropriate prophylactic steps in that respect. The most striking difference, of course, is that St. Mary's retention application was being considered at the outset of the case, while this Court is considering the relationship after Plan confirmation. Clearly, the *St. Mary's* Court had the benefit of hindsight with what had transpired in the *Barnert* case and the related adversary proceeding commenced against McCarter.

There is no dispute that Barnert was at the brink of closure several times during the proceeding and eventually a sale was proposed that was suitable for approval by this Court. Had the efforts undertaken by *all* professionals in the case, most notably by Debtor's Counsel, not occurred, Barnert would have closed and patient care would have transferred cost free to St. Joseph's, the exact result that Porzio argues is the cause of its concern and the basis for its objection. The record shows that McCarter helped prevent that occurring early in the case, thus mitigating

15

against the argument a direct conflict existed.  Finally, the parties' negotiations to keep the hospital

open and operating while facilitating a stalking horse bidder prevented the transfer of services and

this effort was also led by Debtor's Counsel.

On this point, William McDonald, St. Joseph's Chief Executive Officer, acknowledged in

his deposition that he was displeased that Barnert received financial assistance from the State of

New Jersey when it was on the brink of closure early in the case.  *Id.* at 32:12-33:6.  The Court is

aware McCarter resisted the closure effort and was helpful in obtaining the necessary assistance.

Moreover, the deposition also revealed that St. Joseph's did not materially benefit from Barnert's

eventual closure.  *See In re Barnert Memorial Hosp.*, *Hrg. Oral Tr.* at 10:45-46.  St. Joseph's at best

increased its emergency room practice which is typically a drain on hospital profits and the

behavioral health practice is a "break even" venture.  *See id.* at 10:46; *see also Dep. of William

McDonald*, 33:8.

There is natural competition between hospitals in New Jersey for funding and personnel.

All medical institutions in the state are competing for similar funding, not just those in a particular

area.   In addition, the closure of any hospital creates benefits and detriments for other local

institutions as patient care needs to be provided to the community regardless of which entity is

operating.  These arguments raised by Porzio in support of conflict are  issues of natural business

response to external events and this Court does not find them to be dispositive on the issue of

attorney disinterestedness based upon the facts that existed when the potential conflict arose.

No party will dispute that the continuation of health care services in Paterson at the Barnert

site was of paramount concern to not only this Court, but to the Debtor and its counsel, the

Committee and its counsel, the United States Trustee, the Department of Housing and Urban

Development, and the State of New Jersey, all interested parties in this Chapter 11. The parties worked diligently to facilitate a sale that was coordinated by Cain Brothers and proposed by the Debtor. Debtor's Counsel's efforts, like those of the other professionals, were crucial to the conduct and eventual outcome of this case. Immediately after the sale, the Debtor proposed a Plan of Liquidation that was eventually confirmed using Conflicts Counsel due to the pending adversary proceeding.

In *In re E-Toys,* counsel failed to disclose representation of a creditor in the case leading to a disgorgement. *In re E-Toys*, 331 B.R. at 193. The court noted that the case was over and disqualification was not practical. *Id.* Instead, the court determined that any fees received for work it had done on behalf of the creditor would be disgorged, but not the entirety of the fees. *Id.* Similarly, this Court has recently held that disqualified counsel may submit a fee application for reasonable services provided by proposed counsel if a benefit was conferred upon the estate. *In re Jeep Eagle, 17, Inc.*, 09-23708 (DHS), 2009 WL 2132428, *6 (Bankr. D.N.J. July 13, 2009).

Here, as in *E-Toys*, disqualification of McCarter is of no import since a Plan has been confirmed and the Liquidating Trustee is pursuing avoidance actions and addressing the claims allowance process. McCarter clearly provided valuable services to the estate which is not disputed by any party. In addition, St. Joseph's was never a realistic bidder for the Debtor's assets as it was in St. Mary's where St. Joseph's executed a confidentiality agreement. No such agreement was executed in Barnert. *See In re St. Mary's*, *Hrg. Tr.* 7:1-3.

Based upon the record before this Court, it is clear McCarter should have disclosed the extent of its relationship with St. Joseph's as soon as it was known. Clearly, a potential conflict existed. Even when inadvertent, non-disclosure is not without consequences. "So important is the duty of

17

disclosure that the failure to disclose relevant connection is an independent basis for disallowance of fees." *In re E-Toys, Inc.*, 331 B.R. at 190.  However, discretion and disallowance is required, not total disgorgement.  *See Id.*  Based on the record and the Court's observation of the dynamics of this case, the Court does not believe that the dual representation, limited as it was, and with the safeguards in place, compromised Barnert's existence or prospects for sale. As all parties should remember, the Barnert asset sale was not without contention from HUD, the bondholders, Life Trustees and the Committee, among others. At this posture, the Court is not in a position to conjecture what action would have been taken had this been brought to its attention at the outset of the case.  Instead, it is appropriate to focus on the efforts of all counsel including McCarter and Porzio and determine the reasonableness and necessity of the fees sought while considering the benefits they brought to this estate.

Based upon the foregoing, the Court denies Porzio's request for a complete disgorgement of fees by McCarter.  Instead, the Court will exercise its discretion in disallowing a portion of the total fees awarded to McCarter for its untimely delay in advising the Court and parties of its representation of St. Joseph's.

### **Fee Awards**

Porzio's fees as requested for services rendered to the estate are found to be necessary and beneficial to the estate and reasonable as requested.  The Debtor's objection to fees sought in connection with the Committee's adversary proceeding is misplaced.  While McCarter has not sought fees for its defense of the adversary proceeding, the same logic does not apply to Committee counsel who instituted and prosecuted the matter.  The adversary proceeding has, for the reasons stated above, been necessary and beneficial to the estate, and Porzio is entitled to an award of fees

18

for that effort.  As a result, Porzio is awarded final fees in the sum of $880,299.35 and $39,989.57 as reimbursement of expenses.

McCarter has sought a final fee award of $1,650,321.99 and reimbursement of expenses of $77,175.25.  No objection is made to the necessity and reasonableness of the services rendered nor the fees sought and the Court concurs in that evaluation.  Thus, McCarter's final fee application is approved as filed subject to the following disallowance.

For the reasons stated above, a sanction is in order.  It is impossible to calculate with precision or formula the disallowance required for the conduct at issue.  However, the appropriate remedy is, in this Court's view, partial disgorgement of the total fees awarded.  Therefore, the Court, in its discretion, shall impose a disallowance of ten per cent (10%) of the final fee awarded to McCarter.  Thus, McCarter shall be disallowed the sum of $165,032 for a final compensable award of $1,485,289 and full reimbursement of its expenses of $77,175.25.

McCarter's request to apply the retainer of $200,000 held in its trust account is hereby authorized.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

/s/ Donald H. Steckroth

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:  September 21, 2009

19